UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELMAREY MITCHELL, #420337,

                    Petitioner,

v.                                              CASE NO. 10-CV-13849
                                                HONORABLE NANCY G. EDMUNDS

HUGH WOLFENBARGER,

                    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.      Introduction**

        This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner

Delmarey Mitchell ("Petitioner") was convicted of assault with intent to commit murder,

felonious assault, and possession of a firearm during the commission of a felony following

a bench trial in the Wayne County Circuit Court.  He was sentenced to 10 to 20 years

imprisonment on the assault with intent to murder conviction, a concurrent term of two

years eight months to four years imprisonment on the felonious assault conviction, and a

consecutive term of two years imprisonment on the felony firearm conviction in 2006.

        In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence,

the right to cross-examine a witness, a variance between the charges and the evidence,

and the use of a false complaint.  For the reasons set forth, the Court finds that Petitioner

is not entitled to habeas relief on his claims and denies the petition.  The Court also denies

a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.  **Facts and Procedural History**

Petitioner's convictions arise from the shooting of Tyrone Walker outside his residence on Mt. Vernon Street in Detroit, Michigan on August 28, 2005.  At trial, Walker testified that was staying at 60 Mt. Vernon at the time of the shooting as part of an agreement to repair the house for the homeowner who lived across the street.  Petitioner lived next door and Walker, who used cocaine at the time, bought drugs from him.  Walker also did some work for Petitioner's mother.  Walker testified that he was gone most of the day on August, 27, 2005 and returned home at about 3:00 p.m.  When he returned, he ran into a few people who were acting funny.  He then went to Petitioner's home and asked to borrow $20.  Petitioner refused.  Eventually, Petitioner came outside and the two of them walked and talked about the money and obtaining some drugs.  Walker gave him $60 so that he could obtain $80 or $100 worth of drugs.  Petitioner put the money in his pocket.  He then pulled a gun, stuck it in Walker's face, and accused Walker of breaking into his house.  Walker was not armed.  Walker denied breaking into the house and demanded his money back.  Petitioner returned home.  Walker knocked on Petitioner's door and spoke to his mother.  He and Petitioner also exchanged words.  When Petitioner pulled out his gun, Walker left.  He then returned a car to a girl and began walking home.

As Walker neared his house, a car with two people in it passed him and parked.  Petitioner came out and spoke to the driver.  Walker recognized the driver as someone who had helped him put up a fence for Petitioner's mother, but did not recognize the passenger.  The driver was later determined to be Petitioner's brother.  The brother told Walker to return Petitioner's stuff.  When Walker said he didn't know what he was talking about, the brother took his gun out.  Petitioner told his brother that Walker was the guy who broke into

2

the house and told him to "shoot the motherfucker." Petitioner's brother shot Walker in the stomach. Walker heard more shots and ran to 90 Mt. Vernon for help. The three men got into the car and drove away. Walker testified that he was hospitalized for an extended period of time, underwent several surgeries, and continues to have health problems from the shooting.

Walker recalled speaking to Investigator Jackson at Henry Ford Hospital shortly after the shooting and testifying at the preliminary examination conducted at the hospital on September 27, 2005. Walker admitted that he initially told the police that Petitioner shot him, but he believed that Petitioner's brother shot him, although it was dark and they both had guns. Walker said that he told the police that Petitioner shot him because he was the one who accused him of the break-in, took money from him, and stuck a gun in his face. Walker testified that only Petitioner and his brother were in front of him and both had guns at the time of the shooting. He indicated that he didn't remember exactly what happened because he passed out and thought he was dead. Walker recalled testifying at the preliminary examination that Petitioner said, "shoot the motherfucker" and that Petitioner's brother shot him. Walker learned the identity of Petitioner's brother after picking him out in a photo array at the hospital.

Alvin Buckley testified that he lived at 90 Mt. Vernon. He knew both Tyrone Walker and Petitioner from the neighborhood. Walker work on repairing houses and Petitioner lived at 64/68 Mt. Vernon. On the day of the incident, he heard a conversation and three shots coming from the street. He did not see who fired the shots. Walker then came to his door and asked for help because he had been shot. Walker told him that some guys down the street had shot him. Buckley called an ambulance and spoke to Walker to keep him

3

alert until EMS and the police arrived.  Buckley did not see a gun on him.  Buckley spoke with Investigator Jackson and signed a written statement that morning.  According to that statement, when asked if there was anything else he could tell the officer, Buckley said, "All I know is the young guy came out of his house with a gun."  When asked what the man said, Buckley replied, "He said I know who broke into my house.  He did not say anything to nobody.  He just blurted it out."  When asked whether he saw the gun in his hand, Buckley said, "He held the gun in the air saying to the people on this block he know who broke into his house."  Buckley said that he had difficulty recalling the statement due to seizures, but he told the police the truth.

Several Detroit police officers also testified at trial.  Evidence technician Lori Briggs testified that she responded to the scene on the morning of the shooting, took photographs, and collected evidence.  She testified that four .22 spend shell casings were recovered from in front of 64/68 Mt. Vernon and a .380 spent casing was recovered on the street near 73 Mt. Vernon.

Officer Brian Kuzzy testified that he responded to the scene and observed Tyrone Walker on the porch of 90 Mt. Vernon suffering from a gunshot to the lower abdomen.  Walker told him "that lady sons who owns that house shot me."  Officer Kuzzy spoke to Doris Pickett, Petitioner's mother, and learned the names of her sons.  He remained at her house for four hours, but Petitioner did not return.  An arrest warrant was issued for him.  On September 6, 2005, Officer Kuzzy returned to the house on a breaking and entering police run.  Petitioner opened the door, slammed it shut, and then opened it again.  Petitioner initially gave the police different names, but provided his real name after being placed in the patrol car.

4

Investigator Michael Jackson testified that he responded to the scene of the shooting and organized the collection of evidence. He also testified about the statement that he took from Alvin Buckley that morning. Investigator Jackson indicated that Buckley was referring to Petitioner, the son of the lady down the street, when he made his statement. Investigator Jackson testified that he spoke to Petitioner's mother for three or four hours and noted that Petitioner did not return home during that time period. He also spoke to Petitioner's girlfriend, Jessica Dean, who told him nothing. Investigator Jackson interviewed Tyrone Walker at Henry Ford Hospital and took a statement from him. On September 1, 2005, he showed Walker a photo array and Walker pointed out Petitioner and said, "That's the punk motherfucker who shot me." He obtained a warrant for Petitioner's arrest a few days later. Investigator Jackson identified a photo of Petitioner's brother, Lynell Deon Hansberry, and indicated that the police were seeking a warrant for his arrest. Investigator Jackson testified that the first time he heard Tyrone Walker say that Petitioner was not the shooter and told his brother to shoot him was at the preliminary examination at Henry Ford Hospital. Investigator Jackson also took a statement from John Davis at 90 Mt. Vernon on the day of the shooting. Davis reported that Walker told him that Petitioner or his brother shot him.

Petitioner's girlfriend, Jessica Dean, testified that she left the house on Mt. Vernon on the night before the shooting to go buy cigarettes at the gas station. While she was on her way, she saw Tyrone Walker and he showed her a gun before driving off. The next morning, she was in the house and heard an argument. Petitioner went outside and was at the bottom step of the porch when she heard gunshots and dropped to the floor. Dean gave a statement to the police. She explained that someone broke into the house prior to

5

the shooting, that Petitioner and Walker exchanged words about that and money, and that Walker threatened to harm Petitioner and shoot up the house.  Petitioner's mother told them to go inside and they did.  Petitioner's brother came to the house, stayed for a while, and left before the shooting.  Dean claimed that Petitioner was nowhere near the shots when they were fired.

Petitioner testified in his own defense at trial.  He said that Tyrone Walker lived nearby and had done some work for him.  On the day of the shooting, Walker asked to borrow $20 and was trying to buy drugs, but Petitioner told him he didn't have it.  Walker left.  Petitioner denied having a gun or pulling a gun on Walker at any time.  Petitioner testified that his brother, Lynell, came to see him later and they talked inside the house. They talked about the break-in, but Petitioner said that none of his belongings were missing.  He told his brother that everything was fine and his brother left.  While Petitioner was washing up in the house, he heard an argument.  He went on the porch and heard shooting.  He ran to the backyard and went to a friend's house.  Petitioner denied shooting Walker, denied telling his brother to shoot him, denied being with his brother or any other person when Walker got shot, and denied having a gun that day.

At the close of trial, the trial court found Petitioner guilty of the charged offenses. The trial court subsequently conducted a sentencing hearing and imposed sentence.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting the following claims:

I.     His convictions should be reversed because the evidence presented
       in the bench trial failed to prove his guilt beyond a reasonable doubt.

II.    He was denied his Sixth Amendment right to confrontation due to the
       trial court's abuse of its discretion.

6

The court denied relief on those claims and affirmed Petitioner's convictions. *People v. Mitchell*, No. 270581, 2007 WL 1791739 (Mich. Ct. App. June 21, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Mitchell*, 480 Mich. 1005, 742 N.W.2d 372 (2007).

Petitioner then filed a motion for relief from judgment with the state trial court asserting the following claims:

    I.      His due process rights were violated due to a variance which caused actual prejudice to the conduct of his defense.

    II.    His due process rights were violated when he had to stand trial on a false complaint.

The trial court denied the motion, ruling that Petitioner's first claim was essentially decided against him on direct appeal and further review was barred by Michigan Court Rule 6.508(D)(2) and that he had failed to establish cause and prejudice under Michigan Court Rule 6.508(D)(3) for not raising his second claim on direct appeal of his convictions. *People v. Mitchell*, No. 05-009802 (Wayne Co. Cir. Ct. Nov. 18, 2008) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Mitchell*, No. 291870 (Mich. Ct. App. Sept. 3, 2009) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Mitchell*, 485 Mich. 1126, 780 N.W.2d 264 (2010).

Petitioner thereafter filed his federal habeas petition raising the same four claims presented to the state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that it should be denied because

the first three claims lack merit and the last claim is barred by procedural default.   **III.**

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the following standard of review for federal habeas cases filed by state prisoners:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's

8

application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as

9

determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of clearly established law are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

10

## IV.    Discussion

### A.    Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions.  Respondent contends that this claim lacks merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The Court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).   "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).   Accordingly, "[t]he mere

11

existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of assault with intent to commit murder are:  (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder.  *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing *People v. Plummer*, 229 Mich. App. 293, 305, 581 N.W.2d 753, 759 (1998)); MICH. COMP. LAWS § 750.83.  The elements of felonious assault are: (1) an assault, (2) with a dangerous weapon , and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.  *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999); MICH. COMP. LAWS § 750.82.  The elements of felony firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.  *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003); MICH. COMP. LAWS § 750.227b.  To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement which aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave the aid or encouragement.  *People v. Robinson*, 475 Mich. 1, 8–9, 715 N.W.2d 44 (2006) (quoting *People v. Moore*, 470 Mich. 56, 67–68, 679 N.W.2d 41 (2004)).

Additionally, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  *See, e.g., People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Id.*  Direct or

circumstantial evidence and reasonable inferences arising from that evidence may

constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich

392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d

177 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629,

647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich.

App. 429, 434, 381 N.W.2d 740, 742 (1985).

In this case, the Michigan Court of Appeals concluded that the prosecution

presented sufficient evidence to support Petitioner's convictions. The court explained:

> Defendant first argues that the evidence was insufficient to identify him as
> the perpetrator of the crimes charged. He contends that the victim's prior
> statements and testimony regarding defendant's involvement were so
> inherently contradictory and inconsistent that the trial court should have
> rejected his testimony as incredible. "As a general rule, the trial judge, as
> trier of fact, has the duty to weigh the testimony and assess the credibility
> of the witnesses." *People v. Snell*, 118 Mich App 750, 755; 325 NW2d 563
> (1982). In this capacity, the trial court "may choose to believe or disbelieve
> any witness or any evidence presented in reaching a verdict." *People v.*
> *Cummings*, 139 Mich App 286, 294; 362 NW2d 252 (1984).
>
> In this case, the complainant testified that defendant first assaulted him with
> a pistol and accused him of burglarizing defendant's home. According to
> complainant, defendant's brother arrived at defendant's home later in the
> day while complainant again passed in front of defendant's house.
> Defendant's brother remained in the car and defendant ran out, armed
> with the pistol, and told his brother that the complainant had burglarized him.
> Defendant's brother drew his own pistol, pointed it at the complainant, and
> demanded that complainant return the stolen property. When complainant
> refused, defendant told his brother to shoot complainant. At trial,
> complainant accused defendant's brother of shooting him, and that other
> shots were fired after he turned his back to escape. Forensics testimony
> confirmed that three shots were fired in the street, and complainant was shot
> once in the midsection. Defendant's girlfriend did not dispute that
> complainant was shot in front of defendant's house, or that it stemmed from
> an altercation over the identity of the home's burglar. Nor did she testify that
> defendant was absent during the altercation. Instead, she merely testified
> that defendant was inside the house and that the shooter was an unrelated
> and nondescript individual. Defendant's testimony placed defendant on the

porch and did not describe anyone related to the shooting.

Although the complainant's original statements were ambiguous about the identity of the individual who pulled the trigger, defendant's argument makes too much of the complainant's initial statements to police. Complainant explained that he blamed defendant for the shooting because it related to defendant's complaints about the burglary. Moreover, the trial court correctly concluded that the identity of the actual triggerman was irrelevant because complainant, in very consistent and credible terms, adequately described defendant's aiding and abetting his brother's actions. Therefore, viewing the evidence in a light most favorable to the prosecution and deferring to the trial court's determination of credibility, the evidence was sufficient to establish defendant's identity as a perpetrator of the crimes charged. *People v. Wolfe*, 440 Mich 508, 515; 489 NW2d 748, *amended* 441 Mich. 1201 (1992); *People v. Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

*Mitchell*, 2007 WL 1791739 at *1.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim's testimony, if believed, provided sufficient evidence of Petitioner's guilt at trial. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir.2008) (citing cases). Petitioner essentially challenges the trial judge's credibility determination and the inferences the judge drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The judge's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The victim's testimony, if believed,

14

provided sufficient evidence that Petitioner was armed with a gun, that he assaulted the victim, and that he aided and abetted his brother in shooting the victim.  Habeas relief is not warranted on this claim.

**B.    Cross-Examination Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by limiting defense counsel's cross-examination of the shooting victim, Tyrone Walker.  Respondent contends that this claim lacks merit.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  "The  main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315 (1973).  "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness."  *Id.* at 314.  The right of cross-examination, however, is not absolute.  Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998).

The Michigan Court of Appeals denied relief on this claim, finding that it was

15

unsupported by the record and that defense counsel had sufficient opportunity to challenge the victim's credibility.  The court explained:

> Defendant next argues that the trial court violated his right of confrontation by infringing on his right of cross-examination. The record does not support defendant's claim. Although the trial court did, at one point, preclude defense counsel from trying to impeach complainant with an incomplete, but consistent, prior statement, it did not preclude defense counsel from challenging complainant's credibility by exposing and emphasizing the fact that complainant was adding new information that he had never provided to the authorities before. Therefore, defendant has failed to establish any factual support for this claim of error.

*Mitchell*, 2007 WL 1791739 at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The record reveals that the trial court limited defense counsel's use of a prior consistent statement when questioning the shooting victim.  The trial court, however, did not prevent defense counsel from highlighting the differences between his police statements and his testimony or from showing that he was providing new and/or different information.  The trial court, sitting as the fact-finder, was well aware of the variations between the victim's police statements, preliminary examination testimony, and trial testimony.  Petitioner has failed to establish a violation of his constitutional rights.  Habeas relief is not warranted on this claim.

C.    **Variance Claim**

Petitioner also asserts that he is entitled to habeas relief because there was a variance between Tyrone Walker's police statement that Petitioner shot him, which provided the initial basis for the charges, and his trial testimony that Petitioner aided and abetted his brother in the shooting, which was relied upon for conviction.  Respondent contends that this claim is not cognizable and lacks merit.

16

A criminal defendant has a due process right to be informed of the nature of the accusations against him. *See Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *See Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F.2d 918, 930 (6th Cir. 1988). A complaint or indictment need not be perfect under state law so long as it informs the defendant of the crime in sufficient detail so as to enable him to prepare a defense. Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *see also United States v. Nunez*, 668 F.2d 10, 12 (1st Cir. 1981); *Dell v. Straub,* 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002).

Petitioner first raised this claim in his motion for relief from judgment. The state trial court denied relief pursuant to Michigan Court Rule 6.508(d)(2) finding that Petitioner had already challenged the variations between the victim's police statements and his trial testimony on direct appeal and could not relitigate the issue. The state appellate courts denied relief pursuant to Michigan Court Rule 6.508(d). Because the state courts did not address the merits or the federal nature of this claim, this Court's review of the claim is *de novo*. *See, e.g., Carter v. Mitchell*, _ F.3d _, 2012 WL 3854787, *5 (6th Cir. Sept. 6,

17

2012); *Maples v. Stegall*, 340 F.3d 433, 436–37 (6th Cir. 2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

First, to the extent that Petitioner challenges the validity of the information under Michigan law, he is not entitled to habeas relief. Alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Second, Petitioner has not established that his constitutional rights were violated. By being charged with felonious assault, assault with intent to commit murder, and felony firearm, Petitioner was put on notice of the nature and severity of the charges against him. While the victim's testimony as to the details of the shooting varied from the time of his initial statement to police and his preliminary examination and trial testimony, his assertion that both Petitioner and his brother were armed and involved in the confrontation never wavered. Petitioner thus had sufficient notice of the charges against him.

Moreover, Petitioner was not prejudiced in his ability to present a defense. His defense at trial was that he was not armed on that day, that he did not assault the victim, and that neither he nor his brother committed the shooting. Petitioner has not shown how this strategy would have changed had he known that the victim would testify that he aided and abetting the shooting. The record indicates that defense counsel sufficiently challenged the victim's testimony and credibility at trial. Petitioner was not denied due process or the right to present a defense. Habeas relief is not warranted on this claim.

### D.   **False Complaint Claim**

Lastly, Petitioner asserts that he is entitled to habeas relief because he was brought to trial on a false complaint, *i.e.*, the prosecution relied upon false statements from Tyrone

18

Walker to prosecute and convict him.  Respondent contends that this claim is barred by procedural default because Petitioner first raised it in his motion for relief from judgment and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner exhausted this claim in the state courts in his motion for relief from judgment and related appeals.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* MICH. CT. R. 6.508(D)(3).  The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  *See Guilmette v.*

19

*Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of post-conviction relief.

In this case, the state trial court clearly denied relief on this claim on procedural grounds.  The trial court cited Michigan Court Rule 6.508(D)(3) in addressing this claim and concluded that Petitioner had not shown good cause or actual prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise it on direct appeal of his convictions. Accordingly, this false complaint claim is procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner neither alleges nor establishes cause to excuse his procedural default. The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  Nonetheless, the Court notes that Petitioner cannot establish prejudice, or that he is entitled to habeas relief, as this claim lacks merit.

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice."  *Giglio v. United States*, 405 U.S. 150, 153 (1972).

20

It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

Petitioner has made no such showing. He has failed to establish that Tyrone Walker's testimony was false, rather than merely inconsistent and/or a clarification or supplementation of his prior testimony. The fact that a witness contradicts himself or changes his story does not establish perjury. *United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993). More importantly, Petitioner has failed to state facts which show that the prosecutor knowingly presented false information. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). While there were variations between Walker's police statements and his preliminary examination and

21

trial testimony, Petitioner has not shown that Walker's trial testimony was false or that the prosecution knowingly presented false testimony.

Petitioner has also not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that

22

... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37. When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as any appeal could not be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 24, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 24, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer

Case Manager